# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Lorenzo Budet, on behalf of himself and all others similarly situated

## DEFENDANTS
Rutgers Business School, Rutgers The State University of New Jersey

**(b)** County of Residence of First Listed Plaintiff    Atlantic
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Middlesex
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Charles J. Kocher, Esq. & Matthew A. Luber, Esq.
McOmber McOmber & Luber, P.C.
39 E. Main Street, Marlton, NJ 08053, 856-985-9800

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☐ 3 Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 U.S. Government Defendant | ☒ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **INTELLECTUAL PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 350 Motor Vehicle | ☒ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | | | ☐ 790 Other Labor Litigation | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 791 Employee Retirement Income Security Act | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| | | | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | **IMMIGRATION** | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | | ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | | |
|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Class Action Fairness Act ,28 U.S.C. §1332(d) ("CAFA")
Brief description of cause:
Deceptive and unconscionable consumer practices

## VII. REQUESTED IN COMPLAINT:
☒ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $
$9,999,999

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____ DOCKET NUMBER _____

DATE   04/12/2022

SIGNATURE OF ATTORNEY OF RECORD   */s/ Charles J. Kocher, Esq.*

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| LORENZO BUDET, on behalf of himself and all others similarly situated, | Civil No.: |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | **DEMAND FOR JURY TRIAL** |
| RUTGERS BUSINESS SCHOOL, RUTGERS THE STATE UNIVERSITY OF NEW JERSEY, | |
| Defendants. | |

Plaintiff LORENZO BUDET, on behalf of himself and all others similarly situated, by and through his attorneys, McOmber McOmber & Luber, P.C., hereby files this Class Action Complaint against Defendants RUTGERS BUSINESS SCHOOL, RUTGERS THE STATE UNIVERSITY OF NEW JERSEY (hereinafter "Rutgers University") (collectively "Rutgers") and states as follows:

## I.    NATURE OF THE ACTION

1. Plaintiff brings this action individually, and on behalf of all similarly situated persons, who enrolled as students in the Master of Business Administration ("MBA") and other master degree programs at Rutgers Business School since January 1, 2018. This was a massive fraud on Rutgers' prospective students.

2. Plaintiff alleges a violation of the New Jersey Consumer Fraud Act, breach of contract, and unjust enrichment, and seeks declaratory and injunctive relief, compensatory, consequential, and treble damages, costs and reasonable attorneys' fees for Rutgers' fraudulent and deceptive business practices of inflating its educational rankings by submitting false and misleading employability statistics to

educational ranking organizations such as U.S. News & World Report and the Financial Times.

3.   Specifically, Rutgers intentionally reported false data and made misleading claims in its marketing materials, falsely asserting that unemployed students were purported gainfully employed in full-time MBA-level jobs with a third-party company.  The fraud worked.  In 2018, the very first year of the scheme, Rutgers was suddenly propelled to, among other things, the "No. 1" business school in the Northeast region of the United States.  But Rutgers Business School was undeserving of its high rankings, having obtained this and other ranking positions through deceit.  As a result of Rutgers' fraudulent and deceptive business practices, its students paid a premium tuition but received an education less than and different from what they expected given the tainted rankings.  Plaintiff and the Class members would not have enrolled and paid this premium but for Rutgers' deceit. Rutgers was unjustly enriched through its retention of tuition premiums paid by Plaintiff and Class members.

4.   But for Defendant Rutgers Business School's high rankings as set forth below, Plaintiff would have selected a different program.  If Defendant Rutgers Business School had not received these high rankings, Plaintiff would have not agreed to pay Defendants' premium per credit rate of tuition.

5.   Rutgers must pay restitution for reporting misleading and false data to the educational ranking organizations.

## II.        PARTIES AND JURISDICTION

6.   Plaintiff Lorenzo Budet ("Plaintiff") is a resident of Atlantic City, New Jersey.  Plaintiff is a graduate student at Rutgers in its Supply Chain Management MBA program beginning in September 2019.  See https://www.business.rutgers.edu/part-time-mba/supply-chain-management (last visited April 12, 2022) (claiming Rutgers Business School is a "Top 10 MBA

-2-

Program[]" for "Supply Chain Management in the world").  Plaintiff expects to graduate in May 2023.  Plaintiff has paid for his tuition, fees, and related expenses out-of-pocket.

7.  Defendant Rutgers Business School is the second largest school at Defendant Rutgers, serving thousands of students.  Defendant RBS is recognized as one of the top three public business schools among Big Ten business schools and is the highest-ranked public business school in the Northeast United States.[1]

8.  Defendant Rutgers University is a higher education institution with its headquarters and principal place of business located at 57 US Highway 1, New Brunswick, NJ 08901.

### III.        JURISDICTION AND VENUE

9.  The Court has jurisdiction over the subject matter presented by the Complaint because it is a class action arising under the Class Action Fairness Act of 2005 ("CAFA"), which confers original jurisdiction on federal courts over a class action with at least 100 putative class members, minimal diversity in which any member of the putative class is a citizen of a state different from any defendant, and in which the amount in controversy exceeds in the aggregate sum of $5,000,000, exclusive of interest and costs.

10.  Plaintiff alleges that there are at least 100 putative class members, as "[Rutgers Business School] is educating more than 8,000 undergraduate and graduate students per academic year and growing at two locations in New Jersey: Rutgers University-Newark and Rutgers University-New Brunswick (Livingston campus) as well as satellite locations in Jersey City, Madison, and Singapore."[2] Defendant Rutgers Business School boasts an enrollment of approximately 981 MBA students, as well as additional graduate students in its masters programs.

---

[1] https://www.business.rutgers.edu/about-rbs/at-a-glance (last visited April 11, 2022).
[2] http://catalogs.rutgers.edu/generated/nwk-ug_1820/pg418.html (last visited April 11, 2022).

https://www.business.rutgers.edu/about-rbs/at-a-glance (last visited April 12, 2022).

11.   Rutgers Business School enrolled out-of-state graduate students since January 1, 2018, and therefore, Plaintiff alleges that there are members of the proposed Class that are citizens of a state different from Defendants to satisfy the minimal diversity requirement under CAFA.  28 U.S.C. § 1332(d)(2)(A).

12.   Plaintiff alleges that minimal diversity exists with members of the proposed class residents of states other than New Jersey and further that less than two-thirds of the proposed class are residents of New Jersey.

13.   Plaintiff alleges that the amount in controversy exceeds $5,000,000, pursuant 28 U.S.C. § 1332(d)(2) and (6).

14.   Venue within this District is proper because Defendant Rutgers is located at 57 US Highway 1, New Brunswick, NJ 08901, which is within this District, is operating a university at its campus, and the acts complained of occurred within the District.

## IV.      FACTUAL ALLEGATIONS

15.   Rutgers Business School schemed to hire graduating MBA students who had not secured employment by the time of graduation so as to inflate its rankings.

16.   As a result of Defendants' misleading statistical bolstering, Defendant Rutgers Business School's institutional rankings are artificially inflated.   The inflated ranking constitutes a false representation to students, among others, in violation of the Consumer Fraud Act, N.J.S.A. 56:8-1, *et seq*. ("CFA").

17.   Defendants also boasted about the artificially inflated rankings in marketing materials directed at potential Rutgers students, which led to millions of dollars annually in increased tuition revenues.

18.   By bolstering its employment data, Defendant Rutgers Business School created an impression that post-graduation employment is virtually guaranteed.

19.   Instead of telling the truth to prospective and current students, Defendants continue to make the claim that virtually all of its graduates are gainfully employed.

20.   As a result, students chose to attend Rutgers based on these false representations and manipulated MBA and other masters programs ranking statistics.

21.   For Defendants, ensuring each graduate student received a meaningful education is of little import.  Their focal point is "rankings," "employment rates," and other crucial "statistics" that keep students flocking to Defendant Rutgers under the guise that it will, or could, land them a highly coveted, highly paid job.  *See, e.g.*, https://www.business.rutgers.edu/sites/default/files/documents/factsheet-mba-full-time.pdf (last visited April 12, 2022) ("Ranked as the #1 Public Business School for MBA Career Services in the Northeast (Financial Times, 2021) , we help MBA students become competitive candidates so that they can secure MBA career opportunities.").

22.   Worse, students are heavily influenced by and rely upon Defendant Rutgers' ranking/statistics, not only when choosing one institution over another, but when making the decision to take out loans to pay for higher education in the first instance.

23.   Staggering debt coupled with long odds of landing a high paying job are a recipe for economic disaster; indeed, many economists predict another recession due to the trillions of dollars in unpaid student-loan debt.

24.   But none of that matters to Defendants, so long as the Rutgers "ranks" higher than its competitors and the perks of working in higher education remain.

25.   For example, for U.S. News, "[t]he Best Graduate Schools rankings in are based on two types of data: expert opinion about program excellence and statistical indicators that measure the quality of a school's faculty, research and students." *See* https://www.usnews.com/education/best-graduate-schools/articles/how-us-news-

calculated-the-rankings (last visited on April 12, 2022).

26.   Business schools have their own specific criteria.   U.S. News Best Business Schools rankings compare full-time MBA programs on their career placement success, student excellence and qualitative assessments by experts. https://www.usnews.com/best-graduate-schools/top-business-schools/mba-rankings (last visited on April 12, 2022).

27.   To gather data, U.S. News asked deans, program directors and senior faculty to judge the academic quality of programs in their field on a scale of 1 (marginal) to 5 (outstanding).

28.   Statistical indicators used in the six disciplines ranked annually fall into two categories: (1) inputs, or measures of the qualities that students and faculty bring to the educational experience, and (2) outputs, or measures of graduates' achievements linked to their degrees.

29.   Different output measures are available for various fields.   In business, for example, U.S. News uses starting salaries and MBA graduates' ability to find jobs upon graduation or three months later.

30.   In fall 2021 and early 2022, U.S. News surveyed all 493 institutions with master's-level business programs in the U.S. accredited by AACSB International, an organization that's widely considered the gold standard of business school accreditation, for data collection.

31.   Schools reported on their full-time campus-based and hybrid programs that included a foundation of general management skills and knowledge.

32.   These are most often MBA programs, although some degree offerings included in this ranking have titles such as Master of Science in Management and Master of Science in Industrial Administration.

33.   Among those surveyed as part of the Best Business Schools, a total of 363 survey recipients responded.

34.   U.S. News ranked 134 business schools that provided enough data on their full-time MBA programs and had large enough 2021 graduating classes seeking employment for valid comparisons.[3]

35.   A significant factor is "placement success," which includes three ranking indicators on employment and earnings that in total contribute 35% to each school's overall rank.

36.   U.S. News uses the MBA Career Services & Employer Alliance ("CSEA") Standards for Reporting Employment Statistics as the basis for defining how MBA programs should report *full-time* MBA employment statistics and other career information, including starting base salaries, signing bonuses, and what proportion of MBA graduates have jobs at graduation and three months after.   *See* https://www.mbacsea.org/standards (last visited on April 12, 2022).

37.   Defendant Rutgers is a member of the MBA CSEA.  Each year the MBA CSEA releases Standards for Reporting Employment Statistics to "ensure peer schools, prospective students and the media have accurate and comparable employment information from graduate business schools."  Specifically:

---

[3]  The specific indicators can be found here.   https://www.usnews.com/education/best-graduate-schools/articles/business-schools-methodology (last visited on April 12, 2022).

**MBA CAREER SERVICES & EMPLOYER ALLIANCE**

**STANDARDS FOR REPORTING
FULL-TIME MBA EMPLOYMENT STATISTICS©**

**THE PURPOSE AND USE OF STANDARDS FOR REPORTING MBA EMPLOYMENT STATISTICS©**

In 1994, MBA career services professionals from around the United States met and expressed their frustration and dissatisfaction with the lack of agreed upon and accepted reporting standards for MBA employment data. They expressed the perception that (a) many MBA employment reports were generated primarily as marketing devices to attract students and employers and to attain media-generated rankings, (b) employment reports did not reflect an accurate representation of graduates' performance in the job market, (c) salary statistics were inflated by inclusion and/or exclusion of certain populations, and (d) prospective students and employers had no valid way of comparing schools one to another. To address these concerns, the MBA Career Services & Employer Alliance (formerly MBA Career Services Council) developed the Standards for Reporting Employment Statistics© (Standards). Since the development of the Standards, it has continued to be a priority for the Board of Directors to address the need to improve the reliability, usefulness, accuracy and comparability of reported MBA employment data.

In January 2005, the MBA Career Services & Employer Alliance and the Graduate Management Admission Council® (GMAC)® announced to our membership the terms of a strategic partnership to collect and audit employment data. With this agreement, MBA CSEA took the biggest step since the Standards were finalized in 1996, to provide reliable, useful, accurate and comparable employment data on our industry. When GMAC® elected to withdraw from the employment data audit partnership in 2012, the MBA Career Services & Employer Alliance decided to continue with the program independently. In summary, Standards Compliance Reviews (formerly known as reviews of Agreed Upon Procedures) help MBA CSEA to increase the use and knowledge of our Standards and improve interpretation by a diverse audience.

The following tables are required in order to be compliant with the MBA CSEA Standards:
Table 1.A The Full-Time Graduating Class
Table 2.A Timing of First Job Offers
Table 2.B Timing of Job Acceptances
Table 3.A Primary Source of Full-Time Job Acceptances
Table 4.A Compensation Report
Table 4.B Compensation by Professional Functions
Table 4.C Compensation by Industries
Table 4.D World Region Breakdown
One table for your own region from tables 4.E - 4.J

These Standards do not preclude schools from collecting other employment data as deemed necessary for internal or external marketing purposes. Schools are strongly discouraged from reporting additional information for purposes of media surveys.

https://www.mbacsea.org/Files/MBA%20CSEA%20Standards%20Edition%20VI.pdf

38. To ensure comparable data, MBA CSEA maintains two reporting dates for job offers and job acceptances, at graduation and at three months after graduation. Prospective students and the general public view at graduation as a "normal" reporting mark, and ***three months after graduation serves to give all schools equal time post-graduation to report data.***

39. When reporting, Defendant Rutgers was "to develop a table or histogram indicating the number and percent of job seeking full-time graduates who had (1) received their first offer by graduation, (2) received their first offer after graduation

-8-

and by three months after graduation, and (3) did not receive offer by three months after graduation."  Specifically:

*Table 1.A*

**FULL-TIME MBA EMPLOYMENT STATISTICS**
**THE FULL-TIME GRADUATING CLASS**

*Prepare one final report with all data collected as of the end of the data collection period*

| WORK AUTHORIZATION CATEGORIES (1) | PERMANENT WORK AUTHORIZATION | NON-PERMANENT WORK AUTHORIZATION | TOTAL FULL-TIME MBA GRADUATES |
|---|---|---|---|
| SEEKING EMPLOYMENT  (2) | | | |
| NOT SEEKING EMPLOYMENT | | | |
| Company-sponsored or already employed (3) | | | |
| Continuing education (4) | | | |
| Postponing job search (5) | | | |
| Starting a new business (6) | | | |
| Not seeking for other reasons  (7) | | | |
| TOTAL NOT SEEKING EMPLOYMENT | | | |
| NO RECENT INFORMATION AVAILABLE (10) | | | |
| TOTAL GRADUATES | | | |

40.  MBA CSEA provides specific guidelines for each criterion.  For example, a "job offer is a valid offer for a specific position… ***It should however, be MBA-level work, as noted in instruction 2 for Table 1.A.*** It does not include verbal speculation or suggestions involving possible or potential offers for unidentified positions."  Furthermore, an "information source may include an employer, a parent, your personal knowledge, or other reliable sources. The career office should document in an email communication or the Career Services office's tracking system the information on the offer sourced from the graduate, parent, employer or other source stated above, and should include the date of the offer or accepted offer and the date the career office received the information."

41. MBA CSEA also sets forth a reporting deadline: "Based upon all information received as of one month past your three month post-graduation date, develop a table or histogram indicating the number and percent of job seeking full-time graduates who had: a. Accepted a job by graduation b. Accepted a job after graduation and by three months after graduation, and c. Did not accept a job by three months after graduation 2. A job acceptance occurs when a graduate has notified an employer that he or she has accepted a valid offer for a specific position.

The number of graduates in these three categories must equal the number of Total Graduates Seeking Employment (from Table 1.A). Similarly, the denominator when calculating the percent within each of the three categories is the Total Graduates Seeking Employment. This information demonstrates when graduates actually had a job that was acceptable to them."

42.   Furthermore, MBA CSEA tracks "Salary/compensation data pertains only to job acceptances received by three months after graduation."

43.   The data should not include "positions accepted later than three months post-graduation" and "salary information for graduates who were company-sponsored or already employed, i.e., who had not accepted a new employment offer (those graduates should have been included in the Not Seeking Employment category on Table 1.A)."

44.   Using these industry standards has helped U.S. News ensure prospective students have accurate and comparable employment information for each school.

45.   These statistics are a significant portion of the ranking: "There are two distinct indicators on employment rates for graduates of full-time MBA programs: employment rates at graduation (0.07) and employment rates three months after graduation (0.14). In total, employment factors comprise 21% of each school's rank."

46.   In fact, as Assistant Dean and Director Dean R. Vera recently discussed, the "employability" statistics are critical to the "survival" of the business school:



47. Despite being a member of MBA CSEA, Rutgers intentionally manipulates its employment statistics in violation of MBA CSEA standards, thereby

leading to more students enrolling in its program, more national accolades, and more funding.

48.   Compounding the problem, there is no place where prospective students can find Rutgers' "real" employment numbers.  Rutgers supplies the same dubious statistics to the Financial Times, Bloomberg Business Week, and other various news outlets.

49.   Without informing publications, potential students, or parents, Rutgers hired unemployed MBA students and placed them into token permanent positions directly with the university.

50.   Worse, to mask the scheme, Defendants purported to hire the students via the temporary employment agency Adecco.

51.   Defendants also utilized more than $400,000 from the university endowment to fund the sham positions and to issue a kickback to Adecco for engaging in the scheme:

| Name of the employee | Hiring Department | Hiring Manager | Rate including Adecco Fee | Length of Contract: | Start Date: | End Date: | Note | Cost (August 2018) |
|---|---|---|---|---|---|---|---|---|
| REDACTED | RU-Procurement | Nimish Patel | $45.50 | 6 months | | | | $47,320.00 |
| REDACTED | Marketing | Dan Stoll | $45.50 | 6 months | 8/27/2018 | 2/15/2019 | | $160,570.00 |
| | | | $45.50 | 6 month extension | 2/15/2019 | 8/29/2019 | | |
| | | | $45.50 | 4 month extension | 8/29/2019 | 12/31/2019 | | |
| | | | $45.50 | 6 month extension | 12/31/2019 | 6/30/2020 | | |
| REDACTED | PTL Office | Cindy Hicks | $45.50 | 3 months | 8/9/2018 | 2/15/2019 | Changed Dept | $38,400.00 |
| | Development | Rich Knupp | $45.50 | 7 months | 11/5/2018 | 6/25/2019 | 11/2018 | |
| REDACTED | RBS-OCM | Jim King | $45.50 | 6 months | 8/27/2018 | 2/15/2019 | | $47,320.00 |
| REDACTED | Business of Fashio | Tavy Ronen | $45.50 | will end 10/12/18 | 8/20/2018 | 10/12/2018 | REDACTED took over | $47,320.00 |
| REDACTED | Business of Fashio | Tavy Ronen | $45.50 | 6 months | 10/8/2018 | 2/15/2019 | the appointment | |
| REDACTED | Alumni | Joe Schaffer | $45.50 | 6 months | 8/27/2018 | 2/15/2019 | | $47,320.00 |
| | | | | | | | Total Cost | $388,250.00 |

52.   By circumventing the restrictions – i.e., those which do not allow universities to count internal hires for purposes of their employment statistics – Defendant Rutgers inflated its hiring and employment ranking.

53.   Stated differently, through fraud, Defendants included unemployed MBA

-12-

graduates when reporting their hiring and employment statistics.  The scheme was organized, deliberate, and unequivocal.

54.  On June 5, 2018, a meeting was scheduled with Assistant Dean Dean R. Vera and Dan Stoll, Associate Director of Communications and Marketing, among others, to initiate the scheme to manipulate employment data in order to improve the business school's ranking.

55.  After the meeting, Assistant Dean Dean R. Vera, sent around the resumes for the Rutgers Business School MBA Marketing students who had not yet secured employment.

56.  The very next day, Assistant Dean Dean R. Vera followed up stating, "Hi Dan, Attached please find a Resume Packet with candidates whom I believe may meet your hiring needs. Should you want to discuss any of these candidates, do not hesitate to contact me."

57.  On June 14, 2018, Manish Kumar, Former Rutgers Business School Associate Dean of Finance and Administration, followed up, stating: "Hi Dan, Have you identified the two students? If so please let us know so that we can move with *temp hiring process.  Dean- By what date students should be employed by*?"

58.  Assistant Dean Dean R. Vera responded, cc'ing Dean Lei, writing: "The 90th day after Commencement is August 16th. Students must have accepted an offer, whether verbally or in writing, on or before this date."

59.  On June 20, 2018, Assistant Dean Dean R. Vera continued the scheme to hire unemployed RBS students via Adecco by emailing Sharon Lydon, Former Associate Dean of the MBA Program, stating, "Hi Sharon, Would you please share few marketing MBA student's resumes with Gino. He is looking to hire 2 and is approved by Dean Lei."

60.  The next day, Sharon Lydon responded to Dan Stoll to ensure that there is coordination between the departments and so that departments do not interview

students who have already been successfully placed in a token position via the illegal scheme.

61.   Thereafter, Eugene "Gino" Gentile, Director of the Office of Career Management, interviewed two unemployed MBA students for the two approved positions. However, both interviews were unsuccessful. The Director opined that the one of the unemployed MBA students "has not responded to 2 voicemails requesting an interview. Perhaps this is why this candidate is unemployed."

## Students "A" and "B"

62.   Nevertheless, after the unsuccessful interviews, the two approved positions were transferred to James King, Senior Director of the Office of Career Management, under the agreement the Adecco temp hires would report to the Senior Director of the Office of Career Management.

63.   On August 2, 2018, James King confirmed that the Office of Career Management has conducted interviews and extended offers to two students.

64.   On August 8, 2018, James King confirmed that Student A and Student B accepted the positions via Adecco. Student A and Student B would be paid thirty-five dollars an hour and work forty hours a week for the department.  James King then asked Plaintiff to "Please proceed with Adecco so we can get the offers to them this week. Planned start date is 8/20. Thank you for your assistance."

65.   On August 9, 2018, Defendant Rutgers and Adecco entered into a contractual agreement for the employment of Student A and Student B, and Plaintiff submitted Statements of Work concerning their employment.

66.   The scope of assignment was to work directly for Defendant Rutgers Business School itself in a sham position well-below the criteria for an MBA student:

**STATEMENT OF WORK FOR ASSIGNMENT**

This Statement of Work ("SOW"), effective as of July 30, 2018, is entered into by and between **Rutgers, The State University of New Jersey on behalf of RUTGERS BUSINESS SCHOOL BUSINESS OFFICE** ("Client") and Adecco Employment Services (Known as "Adecco").

1. <u>Scope of Assignment</u>.  Adecco will assign one or more individual(s) to Client to assist Client with its completion of the following:

Business Analyst

The Business Analyst duties include but are not limited to:
- Handles the pre-appointment phase of the PTL appointment process which is critical to the faculty staffing process with peak activity at this time
- Responsible for the pre-appointment creation, management and tracking of over 250 PTL appointment contracts for Fall 2018 semester
- Produces, issues and tracks over 250 PTL contracts
- Creates reports to insure contracts are returned, follow up on delinquent contracts and troubleshoot any issues
- Ensures compliance with Federal Immigration Policy through follow up on the timely processing of I-9's
- Provides a high level of service to Part Time Lecturers and Coadjutants during the onboarding process and assist with administrative duties
- Travel amongst regional campuses may be required

Requires a Bachelor's degree in a related field, or an equivalent combination of education and/or experience.  Requires up to two years relevant experience in an administrative function, good communication and interpersonal skills, and computer literacy.
- Candidate must be detail oriented
- Must have great interpersonal and organizational skills
- Excellent follow up abilities and possess the ability to work independently in a high pressure environment
- Candidate must possess discretion and the ability to handle highly confidential and sensitive material
- Experience in Microsoft Word, Mail Merge, and Excel is preferred
- Experience with Access database is a plus

67.   The students were also requested to sign a **"CONFIDENTIALITY AND NON-DISCLOSURE AGREEMENT"** that outlined the terms of their duties in connection with a "temporary position with Adecco to work on assignments at Adecco's Clients."   The agreement states, "Adecco is engaged in the business of providing supplemental staffing services to other businesses (hereinafter referred to as the "Client" or "Clients")."

68.   In this regard, Adecco's client was Defendant Rutgers itself.

69.   On August 20, 2018, Adecco extended employment contracts to Student A and Student B for their positions at the business school. However, Student A declined the contract. Student B accepted the contract and commenced employment Office of Career Management on August 27, 2018.

## <u>Student C</u>

70.   On July 27, Sharon Lydon followed up with Dan Stoll concerning the hiring of unemployed MBA students, stating "Can you begin the hiring process to

hire the two FT MBA marketing students? Please let me know which students you plan to hire. I will inform Jim King and Dean. They are hiring two students also and would like you to have to first choice. Jim will complete his interviews today and then make his selection by the end of the day today. I understand that he would like to give you the first choice." Dan Stoll responded, "We are only looking to hire one MBA student, Krunal. We can start the hiring process."

71.   On August 9, 2018, Student C accepted the position. On August 20, 2018, Adecco extended a contract to Student C.

72.   On August 22, 2018, Dan Stoll confirmed that Student C accepted his contract with Adecco and begins employment Monday, August 27, 2018.

### **Student D**

73.   On July 12, 2018, Department Administrator Cindy McDermott-Hicks, at the request of Manish Kumar, reached out to Sharon Lydon concerning another employment opportunity within the business school for an unemployed MBA student.

74.   Manish Kumar saw the job opening as another opportunity for Defendant Rutgers to manipulate their employment data by counting another unemployed MBA student as employed, thereby improving Defendant Rutgers 'ranking.'   That same day, Sharon Lydon responded, attaching the resumes of unemployed MBA students.

75.   On July 13, 2018, McDermott-Hicks identified three MBA candidates to interview, and Defendant began the onboarding process with Adecco. A pay rate of thirty-five dollars and six-month duration of the aforementioned position.

76.   On July 20, 2018, McDermott-Hicks informed Manish Kumar that they interviewed Student D and Student E for the position. McDermott-Hicks explained that "both are significantly overqualified for this position. It would be my recommendation we immediately handle with OT and post for someone more suited

to the job requirements."

77.   To this, Manish Kumar immediately responded, "***I understand they may be overqualified but if they are willing to accept please go ahead***," exemplifying Manish Kumar's sole intent of inflating the MBA employment numbers to increase the school ranking.

78.   These emails demonstrate that Defendants were going to see the fraud through to the end, and they were clearly aware that the students were being offered sham positions for the express purpose of inflating statistics.

79.   Thereafter, on July 23, 2018, Cindy McDermott-Hicks informed Manish Kumar they are prepared to offer the position to Student D, noting the need for Student D to work twenty-one hours per week to maintain his visa status.

### Student E

80.   On August 3, 2018, James King, at the request of Manish Kumar, reached out to Joe Schaffer, Associate Dean of Executive Education, Corporate & Alumni Engagement, to refer him the list of MBA candidates still seeking employment.

81.   Manish Kumar saw the job opening as another opportunity for Defendants to manipulate their employment data by counting another unemployed MBA student as employed, thereby improving Defendant Rutgers' ranking.

82.   In this correspondence, James King notes his intent to hire Student A, and recommends Student E to Joe Schaffer; noting Student E is the "best of the group – very solid with an extensive marketing background. I did not select him as I thought he should be able to land a full time position."

83.   Thereafter, Joe Schaffer responded with his intent to meet with Student E to discuss the Assistant Director of Marketing Role.

84.   On Wednesday August 8, 2018, Joe and Student E met, and Student E accepted the Assistant Director of Marketing Role, via Adecco.

85.   On August 20, 2018, Adecco extended a contract to Student E. On or about

August 22, 2018, Student E accepted his contract with Adecco and was able to begin on working on Monday, August 27, 2018.

### Student F

86.  On Aug 8, 2018, Manish Kumar emailed Tavy Ronen, Director of Business of Fashion Programs, Sharon Lydon, and James King to inform them that Tavy Ronen's program coordinator has resigned. Manish Kumar continues that Dean Lei "has approved a temp to perm hire through Adecco until FT position can be posted and hired… Jim/Sharon- can you please send some resumes to Tavy to select and interview from?"

87.  The next day, on August 9, 2018, Tavy Ronen informed via email with subject line, ***FW: Found an MBA through Adecco as suggested- please can you bring her on?,*** stating that she had interviewed and selected Student F for the program coordinator position at forty hours per week via Adecco. Tavy continues, "I did everything in my power to be as swift as possible, given Sharon's pressing ratio deadline (tomorrow)."

88.  The rationale for the deadline is clear:  Defendants wanted to be able count another unemployed MBA student as employed in their illegal scheme to manipulate the employment data and improve their rankings.

89.  Not surprisingly, in the same year that Defendants hatched the fraudulent scheme, Defendant Rutgers published an article titled "Financial Times ranks Rutgers Business School No. 1 public business school in Northeast U.S." on its website.[4]

90.  On December 19, 2018, Defendant Rutgers states, "the *Financial Times* released a comprehensive overall ranking of business schools in 2018 placing

---

[4]     https://www.business.rutgers.edu/news/financial-times-ranks-rutgers-business-school-no-1-public-business-school-northeast-us (last visited March 25, 2022).

Rutgers Business School No. 24 among business schools in the Americas and No. 1 among public business schools in the Northeast U.S."

91.   In the aforementioned article, Dean Lei, Dean of Rutgers Business School, purports the schools success as follows, "we are working hard to stay ahead of the trends in business education, from our focus on constantly innovating our curriculum in collaboration with alumni and corporate partners in our Executive MBA and Full-Time MBA programs to our efforts to extend the currency of a Rutgers Business School degree with lifelong learning through our Executive Education programs, we are a partner with our students and alumni their entire lives."

92.   Dean Lei, however, failed to mention the true reason for the improved rankings – data manipulation in violation of the law.

93.   By unlawfully bolstering its employment data, Defendant Rutgers creates an impression of bountiful employment opportunity that does not exist, thereby misleading Defendants' alumni, students, and prospective students.

94.   Defendant Rutgers excessively boast their fraudulently enhanced ranking via their marketing materials. Defendants utilize their ranking heavily to induce students to attend the University.

95.   Defendant RBS's official website even has its own stats & rankings page. Defendant RBS flaunt its achievements and accolades in the rankings, stating, "Rutgers Business School- Newark and New Brunswick is recognized as one of the top three public business schools among Big Ten (BTAA) business schools and is the highest-ranked public business school in the Northeast U.S." [5]  The applicable rankings for Defendant Rutgers Business School are listed as follows:

---

[5] https://www.business.rutgers.edu/about-rbs/ranking (last visited March 25, 2022)

## 2017

#1 MBA Employment among the Big 10 Schools - Financial Times
#1 Public Business School in the Tri-State Area (NY, NJ, CT) - U.S. News & World Report
#1 Return on Investment, salary increase (%) in the US - Financial Times -
#1 AIS Groups in auditing research – BYU Ranking of Accounting Research
#2 Top Business Schools for Supply Chain Management - Find-MBA.com
#2 MBA Job Placement in the U.S. - Bloomberg Businessweek
#4 Top Business Schools for Healthcare / Pharma / Biotech - Find-MBA.com
#5 Top Business Schools for Marketing - Find-MBA.com
#5 Top Business Schools for Operations Management - Find-MBA.com
#5 Top Executive MBA program for economics - Financial Times
#6 Best Online Graduate Business Programs for Veterans (Excluding MBA) - U.S. News & World Report
#7 Executive MBA program in the northeast - Ivy Exec
#7 MBA in manufacturing/logistics globally (RBS Supply Chain) - Financial Times
#7 Top Schools for Entrepreneurs - Bloomberg
#8 Supply Chain Management journal research output - globally (#7 in US and #3 among Big 10) - The SCM Journal List
#9 Best Business School for Supply Chain Management/Logistics - U.S. News & World Report
#9 Return on Investment, salary increase (%) globally - Financial Times
#12 Online graduate business programs in the nation (excluding MBA) - U.S. News & World Report
#12 Value for Money in the US - Financial Times - Learn More
#13 Digital Marketing Certificate program - Value Colleges
#14 Total Salary in executive MBA programs, nationally - Financial Times
#15 Salary Increase (%) in executive MBA programs, nationally - Financial Times
#15 EMBA programs globally - CEO Magazine
#17 Financial Engineering Programs in North America - QuantNet
#22 Top executive MBA program, nationally - Financial Times
#35 Best Colleges for Business Majors - Money
#37 Top 100 full-time MBA program in the US - Financial Times - Learn More
#38 Part-Time MBA Program, nationwide - U.S. News & World Report - Learn More
#48 MBA Program globally - QS World University rankings
#49 Top 100 U.S. MBA programs - Poets & Quants
#50 Full-Time MBA program, nationwide - U.S. News & World Report - Learn More
#52 Full-Time MBA program, nationwide - Forbes
#70 Top 100 full-time MBA program in the world - Financial Times - Learn More

## **2018**

#1 Public Business School in the Northeast U.S. - Financial Times
#2 Top MBA program in Supply Chain Management - Find-MBA.com
#2 Top Executive MBA program in Economics - Financial Times
#3 Top Executive MBA program in Statistics - Financial Times
#3 Top Executive MBA program in Corporate Strategy - Financial Times
#3 Executive MBA program with Strong Career Services Support - globally – Ivy Exec
#3 Executive MBA program for Executives in the Government and Nonprofit Sectors - Ivy Exec
#3 Public Business School among the 14 Big Ten (BTAA) business schools - Financial Times
#4 Top 10 MBA program in Healthcare/Pharma/Biotech - Find-MBA.com
#5 Best Online Accounting Master's for Government Employees - Online Masters
#5 Top 25 North American Supply Chain Graduate Programs - Gartner
#5 Top 10 MBA program in Operations Management - Find-MBA.com
#5 Executive MBA program in the Northeast - Ivy Exec
#6 Supply Chain Management program in the U.S. - U.S. News & World Report
#7 Public Business School in the U.S. - Financial Times
#8 Best Online Master's Program (Supply Chain Management) - Best Colleges
#8 Best Online Graduate Business Programs: Accounting - U.S. News & World Report
#9 Best Online Master's in Supply Chain Management - Best College Review
#9 Best Online Graduate Business Programs: Supply Chain Management/Logistics - U.S. News & World Report
#10 Top Executive MBA program in Manufacturing/Logistics - Financial Times
#11 Executive Education Open Enrollment Programs in the U.S. - Financial Times
#11 Executive MBA program in the world - CEO Magazine
#11 Value Colleges' Top 50 Best Value Master's in Taxation Degrees - Value Colleges
#16 Quantitative Finance program in North America (#1 in the Big Ten) - QuantNet
#19 Two-year MBA degrees among public business schools - Times Higher Education/Wall Street Journal
#21 Best Online Graduate Business Programs - U.S. News & World Report
#22 Top EMBA program in the U.S. - Financial Times
#24 Top Business School in the Americas - Financial Times
#27 Executive MBA program in the U.S. - The Economist
#38 MBA program in Career Services globally - Financial Times
#45 Executive MBA program in the world - The Economist
#46 Two-year MBA degrees, Global - Times Higher Education/Wall Street Journal
#47 Top 100 full-time MBA program in the world - Financial Times

## 2019:

#1 Return-on-Investment for a business degree in the Northeast, RBS-New Brunswick - Poets & Quants
#1 Executive MBA program for Life Balance, globally - Ivy Exec
#1 Accounting Information Systems (AIS) group in auditing research - globally - Brigham Young University (BYU) Ranking of Accounting Research
#2 Best Online Master's in Accounting Programs (Masters in Governmental Accounting) - College Consensus
#2 Executive MBA program in Economics, globally - Financial Times
#5 Executive MBA program for Corporate Social Responsibility, globally - Financial Times
#5 Best Master's in Taxation in the U.S - Accounting Degree Review
#6 Best Online Graduate Supply Chain Management/Logistics Business Programs - U.S. News & World Report
#6 Business Schools in the U.S. with the most international students, RBS New Brunswick - Poets & Quants
#8 Best Online Master's in Management Program in the U.S. -Supply Chain Management (#2 in the Big 10) Best Colleges
#8 Master of Public Health/MBA Dual Degrees - MPH Online
#9 Best Online Graduate Accounting Business Programs - U.S. News & World Report
#10 Executive Education Open Enrollment Programs in the U.S. (#5 among U.S. public business schools) Financial Times
#11 Executive MBA program, globally - CEO Magazine
#13 Return-on-Investment for a business degree, RBS-New Brunswick - Poets & Quants
#17 Best Online Graduate Business Programs - U.S. News & World Report
#18 Financial Engineering (MFE) programs (Master of Quantitative Finance) - QuantNet
#19 Executive MBA program, in the US - Financial Times
#20 Executive MBA program, globally - Ivy Exec
#24 Top Executive MBA programs in the nation - Poets & Quants
#28 Return-on-Investment for a business degree, RBS-Newark - Poets & Quants
#50 Full-Time MBA program in the U.S. - QS Top MBA
Top 5 Executive MBA Programs with a Focus on Healthcare - Ivy Exec
Top 10 Top Business Schools for Supply Chain Management, Operations Management, & Healthcare/Pharma/Biotech - Find-MBA.com

## **2020**

#1 Public Executive MBA program in the Northeast - Ivy Exec
#1 Public MBA (Full-Time & Part-Time) in New York Tristate (NY/NJ/CT) - U.S. News & World Report (Full-Time MBA) & U.S. News & World Report (Part-Time MBA)
#2 Executive MBA program in Economics, globally - Financial Times
#3 Executive MBA program for Life Balance, globally - Ivy Exec
#6 Financial Engineering Program in U.S. for job placement 3-months after graduation - QuantNet
#6 Best Online Graduate Supply Chain Management/Logistics Business Programs - U.S. News & World Report
#8 Best Supply Chain Management Bachelor Degrees - Great Business Schools
#9 Open-Enrollment Executive Education Programs in the US - Financial Times
#10 Student rating of the quality of the faculty, globally (EMBA) - The Economist
#11 Supply Chain Management MBA in the U.S. - U.S. News & World Report
#13 Best Online Graduate Accounting Business Programs - U.S. News & World Report
#15 Best Master's in Quantitative Finance Programs - QuantNet
#15 Executive MBA program, in the US - Financial Times
#16 Executive MBA program, globally - CEO Magazine
#22 Best Online Graduate Business Programs - U.S. News & World Report
#23 Executive MBA program in the U.S. (#35 globally) - Ivy Exec
#28 Top Executive MBA programs in the U.S (#5 in the Big 10). - The Economist
#46 Best Business Administration Schools and Colleges in the U.S. - University HQ
#48 Top Executive MBA programs in the World - The Economist
#48 Best Business Schools and Colleges in the U.S. - UniversityHQ
#49 Open-Enrollment Executive Education Programs in the World - Financial Times
#52 Part-Time MBA in the U.S. -U.S. News & World Report
#56 Full-Time MBA in the U.S. - U.S. News & World Report
Top 5 Best EMBA Programs for Aspiring Entrepreneurs - Ivy Exec

## 2021

#1 Public Business School in the Northeast - Fortune
#1 Public MBA for Entrepreneurship on the East Coast - Poets & Quants
#1 Public Business School in the Northeast - Eduniversal
#1 MBA in International Business - Great Business Schools
#1 Public Business School for MBA Total Salary in the Northeast - Financial Times
#1 Public Business School for MBA Career Services in the Northeast - Financial Times
#1 Top Part-Time MBA Program in the Northeast - University HQ
#1 Best Public Full-Time MBA Program in the Northeast - Fortune
#1 Top Business Schools for Healthcare / Pharma / Biotech - Find-MBA.com
#2 Top Business Schools for Supply Chain Management - Find-MBA.com
#3 World's Top 100 Business School for Economics Teaching - Financial Times
#3 Best Online Accounting Masters (in Governmental Accounting) - Great Business Schools
#3 Public Business School on the East Coast - Eduniversal
#3 Value for Money in the Northeast - Financial Times
#4 Best Value Online Digital Marketing Master's in the U.S. - Value Colleges
#5 Top Business Schools for Operations Management - Find-MBA.com
#5 Best Online Masters Programs for (non-MBA) for Veterans - U.S. News & World Report
#5 Salary Increase (%) in the U.S. (Executive MBA) - Financial Times
#6 Best Online Masters Programs (non-MBA) for Supply Chain Management - U.S. News & World Report
#6 Best Online Masters Programs (non-MBA) for Marketing - U.S. News & World Report
#6 Career Progress in the U.S. (Executive MBA) - Financial Times
#8 Best Master's Degrees in Taxation - Grad School Hub
#8 Best Online Masters Programs (non-MBA) for Accounting - U.S. News & World Report
#8 Top Finance Schools and University Programs in the U.S. - University HQ
#9 Top Business Schools With The Most International Students - Poets & Quants
#11 Public Business School in the U.S. - Eduniversal
#11 Best Accounting Schools and Universities in the U.S. - University HQ
#11 Public Executive MBA program in the U.S. - Poets & Quants
#12 Best Overall Online Masters Programs (non-MBA) (#3 in the Big Ten) - U.S. News & World Report
#13 Executive MBA program, globally - CEO Magazine
#14 Best Financial Engineering Programs - QuantNet
#15 Top Part-Time MBA Program in the U.S. (#4 in the Big Ten) - University HQ
#16 Best Public Full-Time MBA Program in the U.S. - Fortune
#17 Public Business School for MBA Career Services in the U.S. - Financial Times
#19 Top University for Business & Economics among U.S. public universities (Rutgers – New Brunswick) - Times Higher Education

#20 World's Top 100 Business Schools for Executive MBA in the U.S. (#4 in the Big Ten) Financial Times
#21 Public Business School in the U.S. - Financial Times
#21 Career Progress worldwide (Executive MBA) - Financial Times
#22 Public Business School for MBA Career Services in the World - Financial Times
#22 Executive MBA program in the U.S. - Poets & Quants
#24 Best MBA Program for Entrepreneurship globally (#4 in the Big 10) - Poets & Quants
#25 Salary Increase (%) worldwide (Executive MBA) - Financial Times
#29 Top Business School in the U.S. - Eduniversal
#36 Top University for Business & Economics in the U.S. (Rutgers – New Brunswick) - Times Higher Education
#37 Best Full-Time MBA Programs of 2021 - Fortune
#86 Public Business School in the World - Financial Times
#88 World's Top 100 Business Schools for Executive MBA - Financial Times

## 2022

#1 Public Business School in the Northeast (MBA) - Bloomberg Businessweek
#1 Public Business School in the U.S. for Salary Percentage Increase (MBA) - Financial Times
#2 Best Public MBA Program for Entrepreneurship in the U.S. - Poets & Quants
#3 Best Overall Employment Outcomes in the U.S. (MBA) - Financial Times
#4 Best Online Accounting Program (MACC Governmental Accounting) - Value Colleges
#6 Best Bachelor's in Supply Chain Management in the U.S. - Bachelor's Degree Center
#7 Best Public Financial Engineering Program in the U.S. - QuantNet
#8 Global Executive MBA - CEO Magazine
#10 World's Best Public MBA Program for Entrepreneurship - Poets & Quants
#12 Supply Chain Management MBA programs in the U.S. - U.S. News & World Report
#14 Public Business School in the U.S. (MBA) - Financial Times
#15 Best Public Business School in the U.S. (MBA) - Bloomberg Businessweek
#16 MBA employment nationwide (Full-Time MBA) - U.S. News & World Report
#16 Top 25 public MBA programs in the U.S. (Part-Time MBA) - U.S. News & World Report
#16 Best Financial Engineering Program in the U.S. (#1 in the Big Ten ) - QuantNet
#21 Top Business School in the U.S. for Diversity (MBA) - Bloomberg Businessweek
#22 Top 25 public MBA programs in the U.S. (Full-Time MBA ) - U.S. News & World Report
#28 Top MBA programs in the U.S. (Part-Time MBA) - U.S. News & World Report

#37 Best Business School in the U.S. (MBA) - Bloomberg Businessweek
#38 Best Business School in the U.S. (MBA) - Financial Times
#44 Top MBA programs in the U.S. (Full-Time MBA) - U.S. News & World Report
#69 Best Overall Business School for Global MBA - Financial Times

96.   According to Defendants' website, "[t]he average MBA salary three years after graduation, $129,570, was the best in the Northeast U.S. for Public MBA programs according to Financial Times 2022 report on the Best 100 Global MBA programs."   https://www.business.rutgers.edu/full-time-mba (last visited April 12, 2022).  Defendants also represented:  "[o]ur dedicated career management staff and our talented MBA students are a powerful combination. It's why we are ranked #1 in MBA employment in the Big 10, #1 in MBA job placement nationwide and #1 for return-on-investment and salary increase in the U.S." *Id.*

97.   On August 10, 2018, Dean Lei congratulated Assistant Dean Dean R.Vera, Ashwani Monga (Provost and Executive Vice Chancellor of RU-N) and Professor James King for their efforts:

RE: Class2018 Placement
**From:** Lei Lei
**Sent:** Friday, August 10, 2018 10:25 AM
**To:** Ashwani Monga <amonga@business.rutgers.edu>;
James King <jking@business.rutgers.edu>; Dean Vera
<dvera@business.rutgers.edu>
**Subject:** Class2018 Placement

Ashwani, Jim and Dean:

Looks like the number of still-seeking is now down to 17. This is a very impressive result given the large number of FT MBAs (109) and the large number of F1 visa students who have graduated this year. Thanks for your hard work and dedication toward serving our students.

Meanwhile, please also keep in mind that, among the 92 students who have been placed with FT jobs, we do have few (6?) students hired by Addeco to fill urgent temporary work needs at Rutgers/RBS. I am not familiar with the placement data reporting process. However, if the

temporary hiring should be disclosed to the ranking agency, please do so to avoid any misunderstanding. The reputation of RBS and our integrity are more important than anything else.
Manish and Dee are working with Addeco on the contracts for the temporary hiring now (e.g., pay rate, employment duration, etc.). Please work with them to ensure the contracts are done properly.

Lei

98.  That same day, Assistant Dean Dean R. Vera responds, stating, "Thank you, Lei. Regarding the Adecco hires, it is my understanding that these are contract positions with the potential of leading to a full-time position. (Please check with Manish.) If that is the case, the Standards state that we count them as employed."

99.  Manish Kumar confirms, stating, "Attached is a sample contract. At Rutgers to hire for a FT position we have to go through open search and ROCS. Of course, if theses Adecco employee perform well, RBS will give them full consideration during search process which could potentially lead to their hire." To which, Assistant Dean Dean R. Vera responds, "Thank you for the clarification, Manish."

100.  Defendants counted the internal MBA students (via Adecco) as employed in order to manipulate employment data and improve their rankings.

101.  To make matter worse, Defendants counted the Adecco hires as employed on August 10, 2018, even though the unemployed MBA students were not extended offers via Adecco until August 14, 2018 and August 20, 2018.   This too was a false and misleading representation.

102.  The false and misleading data has artificially boosted Defendant Rutgers's rankings.  The submission includes three years' worth of information.  Thus, the data submitted in 2018, impacts the rankings for 2019, 2020, and 2021.  Dean Lei recently reported that Rutgers once again moved up in the rankings:



103.  Shortly after Dean Lei reported on Defendant Rutgers's rankings, on March 11, 2022, Dean Porat of Temple's Fox Business School was sentenced to one year and two months in prison, three years of supervised release, and was ordered to pay a $250,000 fine by United States District Court Judge Gerald J. Pappert after being convicted of fraud in connection with a scheme to artificially inflate the school's program rankings against other schools nationwide by sending false information about GRE and GMAT scores to U.S. News and World Report. This generated some $40 million in extra tuition dollars for the university, according to the government at the time of his conviction.

104.  The conviction rattled Defendant Rutgers Business School employees, including Dean Lei.   Indeed, many Defendant RBS professors began openly discussing the propriety of the conviction and downplayed the seriousness of the crime.  Dean Lei was copied on the emails:

**From:** Christopher Young
**Sent:** Monday, March 14, 2022 10:24 AM
**To:** Michael Barnett; RBS Share
**Subject:** Re: Rank rankings

I think actually manipulating the data, physically changing it goes much further than perhaps spinning it. Additionally, the conspiracy adds to the flavor of the fraud. BTW - should a politician conspire with others in office to change data, such as the unemployment rate, or inflation rate, while knowing what they are doing, most likely would be prosecuted.

I am working on a case at the moment, where a similar event happened (though not with the same level of conspiracy), and in that case it is a class action civil suit, which will most likely bankrupt the school. This is a good outcome for the students, as the school is dismal, and preying on the least fortunate.

From another angle - perhaps making an example out of one school is necessary to remove the outward lies that are sometime embedded in the marketing literature.

C

---

**From:** Michael Barnett <mbarnett@business.rutgers.edu>
**Sent:** Monday, March 14, 2022 10:14 AM
**To:** Christopher Young <chris.young@business.rutgers.edu>; RBS Share <share@business.rutgers.edu>
**Subject:** RE: Rank rankings

Thanks. I still don't think a conspiracy to "deceive readers of U.S. News" constitutes a federal crime. If it is, then I don't understand how every politician at every level of government, or every advertising pitchman, or just about anyone and everyone who markets themselves, their organizations, and their products/services with the help of others isn't subject to felony prosecution.

---

**From:** Michael Barnett <mbarnett@business.rutgers.edu>
**Sent:** Monday, March 14, 2022 9:28 AM
**To:** RBS Share <share@business.rutgers.edu>
**Subject:** Rank rankings

Any of our legal minds have any idea how this dean from a business school down the road wound up criminally convicted, imprisoned, and owing hundreds of thousands in restitution for his "maniacal" obsession with driving his business school ranking to the top spot? According to the judge who sentenced him:

"Going forward," the judge said, "if school administrators focus less on how to massage and achieve numbers that can be plugged into calculations that can spit out rankings and more on the quality of academic performance and improving the student experience, students, families, and the schools themselves will be better off."

Well sure. That's good practice. But where's the criminality here? Where's the line between putting a positive spin on the school's numbers and felonious behavior? It's a weird concept that MBA students are criminally defrauded by causing a ratings agency (that is, a failing magazine seeking to market itself) to over-rate an MBA program.

Here's the (latest) article on the debacle: https://www.inquirer.com/news/moshe-porat-sentence-temple-university-fox-school-business-rankings-20220311.html

Confusedly,
Mike

---

Michael L. Barnett
Professor of Management & Global Business, and Dean's Research Professor
Rutgers Business School – Newark & New Brunswick
Personal website: profmikebarnett.com
Academic Director, Rutgers Institute for Corporate Social Innovation
Chair, Newark Faculty Council
Founder, McNair Business Scholars Network
Fellow, Rutgers Institute for Ethical Leadership
International Research Fellow, Oxford University Centre for Corporate Reputation
Google Scholar Page

105.   The professors also discuss the data manipulation and how it could go a long way in swaying the rankings:



**Re: Rank rankings**

MA   Michael Alles
To   ○ Jonathan Eckstein;  ○ Christopher Young;  ○ Michael Barnett;  ○ RBS Share                    Mon 3/14/2022 2:10 PM

⇦ Reply   ⇦ Reply All   → Forward   ···

The indictment is fascinating and makes it clear exactly what the criminality was. It is hilarious that this dean was once a professor of risk management (at least it wasn't ethics!). What is even more amazing is how sensitive these rankings are. A simple change in the percentage of students who take the GMAT (not even what their score was) resulted in the ranking of Fox going from 6 to 1. It was also not a good idea for USNWR to tell the defendants "of course we don't audit the data submitted". Interestingly, it was Fox's own poets and quants class that found the fraud. I congratulate their sense of ethics but wonder if they would have done so if they knew that as a result their school's ranking would fall from 1 to below 100 and their own degree's value become totally devalued. Michael

-------------------------------------------------
Associate Professor Michael Alles

Rutgers Business School
Department of Accounting & Information Systems
One Washington Park
Room 928
Newark, NJ 07102-3122
(973) 353 5352 (W)
(646) 206 7444 (Cell)
(973) 353 1283 (Fax)

alles@business.rutgers.edu

**RE: Rank rankings**

WR   W Ray Williams
To   ○ Arturo Osorio;  ○ Michael Barnett;  ○ Michael Alles;  ○ Bharat Sarath;  ○ Jonathan Eckstein;  ○ Christopher Young;  ○ RBS Share       Tue 3/15/2022 2:00 PM

⇦ Reply   ⇦ Reply All   → Forward   ···

AWWWW-the never ending rankings discussion. I weighed in extensively in the past- several times. I reiterate  Marketing marketing  marketing is the prime mover in the fickle ranking race. truth in advertising I guess applies even in this context. Fraud is actionable broadly if  it induces  one to buy / enroll to best of my understanding .

I suspect , rbs , in its pursuit is on solid ground . again, never  had bad programs . just now telling the story better, making the right connections and adequately financing the campaign ,

It is my understanding that most schools now have staff whose primary purpose is the rankings increase.

but what do I know, "such" is far beyond by pay grade and status.  But I gladly accept any vicarious or attendant benefits that incidentally   accrue .

recently , Rutgers was an answer to a jeopardy question .
 being an alum and instructor--- I walked taller for the rest of the evening............

ray

## V.     CLASS ACTION ALLEGATIONS

### Class Definition

106.   Plaintiff brings this action pursuant to 28 U.S.C. § 1332(d) on behalf of a proposed class of persons (the "Class") pursuant to Federal Rules of Civil Procedure 23(b)(2), (3), defined as:

> All persons in the United States enrolled as students in the Master of Business Administration and other master degree programs offered by Rutgers Business School between January 1, 2018 and the present.

107.   Excluded from the Class are Defendants, any of its past or present officers, directors, agents, and affiliates, any judge who presides over the action, and all counsel of record.

108.   Plaintiff reserves the right to expand, limit, modify, or amend the definitions of the class as may be desirable or appropriate during the course of the litigation.

109.   Class certification is proper because the question raised by the Class Action Complaint is one of a common or general interest affecting numerous persons so that it is impracticable to bring them all before the Court.

### Numerosity and Ascertainability

110.   The class is sufficiently numerous, as Defendant Rutgers Business School boasts an enrollment of approximately 981 MBA students, as well as additional graduate students in its masters programs.  https://www.business.rutgers.edu/about-rbs/at-a-glance (last visited April 12, 2022).  Class members may be identified through objective means, such as Defendants' records, and notified of the action by recognized methods of notice, such as mail or e-mail, or publication in print or on the Internet. Furthermore, Defendants maintain records and/or rosters of all of their attending students and their financial obligations and payments.

## Adequacy

111.   Plaintiff and her counsel are adequate representatives of the interests of the putative Class.  Plaintiff is a student at Rutgers who is being charged tuition and fees as part of his enrollment.  He contends that Rutgers has misrepresented its employability statistics to students and third-party entities that ranked Rutgers as a top business school.  According to Defendants' website, "Ranked as the #1 Public Business School for MBA Career Services in the Northeast (Financial Times, 2021), we help MBA students become competitive candidates so that they can secure MBA career opportunities."

https://www.business.rutgers.edu/sites/default/files/documents/factsheet-mba-full-time.pdf  (last visited April 12, 2022).  And the rankings above were tainted by Defendants' fraudulent and deceptive business practices in connection with their reporting to the third-parties that ranked Rutgers Business School.

112.   Plaintiff has retained counsel experienced in class action litigation to litigate and represent the interests of Plaintiff, the Class Representative, and the Class.

## Typicality

113.   Plaintiff's claims are typical of the claims being raised on behalf of the absent Class members.  Plaintiff and the Class members have been injured by the same wrongful practices of Rutgers.  Plaintiff's claims arise from the same practices and conduct that give rise to the claims of all Class members and are based on the same legal theories.

## Superiority

114.   A class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Here, classwide litigation is superior to individually litigating and adjudicating the dispute, because given the size of the individual Class member's claims and the expense of litigating those claims, few,

if any, Class members could afford to or would seek legal redress individually for the wrongs Defendants committed against them and absent Class members have no substantial interest in individually controlling the prosecution of individual actions. This action will also promote an orderly and expeditious administration and adjudication of the proposed Class claims, economies of time, effort and resources will be fostered, and uniformity of decisions will be insured. Without a class action, Class members will continue to suffer damages, and Rutgers' violations of law will proceed without remedy while Defendants continue to reap and retain the proceeds of the wrongful conduct. Plaintiff is not aware of any difficulty that would be encountered in the management of this litigation which would preclude class certification.

115. A class action is also superior to other available methods for the fair and efficient adjudication of the controversy because it eliminates the prospect of inconsistent rulings that would unsettle the legal obligations or expectations of Defendant, Plaintiff, and Class members.

116. Because the damages suffered by each individual class member may be relatively small, the expense and burden of individual litigation would make it very difficult or impossible for individual class members to redress the wrongs done to each of them individually, so that the prosecution of specific actions and the burden imposed on the judicial system by individual litigation by the Class would be significant, making class adjudication the superior option.

117. The conduct of the action as a class action presents far fewer management difficulties, far better conserves judicial resources and the parties' resources, and far more effectively protects the rights of each class member than would piecemeal litigation. Compared to the expense, burdens, inconsistencies, economic infeasibility, and inefficiencies of individualized litigation, any challenge of managing the action as a class action is substantially outweighed by the benefits to

the legitimate interests of the parties, the Court, and the public of class treatment, making class adjudication superior to other alternatives.

## Commonality and Predominance

118.   Plaintiff's Complaint raises questions of fact or law common to the class that predominate over questions affecting only individual class members.  Among these predominating common questions are:

a.   Whether the relationship between Defendant and Plaintiff and members of the Class is contractual;

b.   Whether Rutgers breached its educational contract with Plaintiff and members of the proposed Class;

c.   Whether Plaintiff and Class members have been harmed and the proper measure of relief;

d.   Whether Plaintiff and Class members are entitled to an award of attorneys' fees and expenses; and

e.   Whether Plaintiff and Class members are entitled to declaratory and/or equitable relief, and if so, the nature of such relief.

f.   Whether Defendants were unjustly enriched by retaining tuition and mandatory fee and other expense payments when Plaintiff and Class members were duped into paying premium prices for discount degrees.

119.   In the event that the Court were to find the proposed class definition inadequate in any way, Plaintiff respectfully prays for certification of any other alternative, narrower class definition or for the certification of subclasses, as appropriate.

## COUNT I

### New Jersey Consumer Fraud Act

### (On Behalf of Plaintiff and the Class Against All Defendants)

120.   Plaintiff re-alleges and incorporates by reference all previous allegations as though set forth in full herein.

121.   The term "merchandise" under the New Jersey Consumer Fraud Act includes "goods" and "services or anything offered, directly or indirectly to the public for sale." N.J.S.A. 56:80-1(c).

122.   Defendants are in the business of marketing and delivering education services and degrees to the general public.

123.   As students, Plaintiff and the Class members are consumers of educational services.

124.   The educational services and degrees offered by Rutgers are "merchandise" under the New Jersey Consumer Fraud Act.

125.   Rutgers, an educational institution, is subject to the same laws, both statutory and common law, that govern other purveyors of goods and services in New Jersey.

126.   Section 56:8-2 of the New Jersey Consumer Fraud Act provides that:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice ….

N.J.S.A. 56:8-2.

127.  Rutgers violated the New Jersey Consumer Fraud Act by engaging in an "unconscionable commercial practice," "deception," "fraud," "false pretense," "false promise," and "misrepresentation" by deceptively reporting admissions data to increase its rankings.

128.  In addition, if Rutgers had questions about this practice of hiring students through a temp agency and counting them as employed for purposes of employability statistics it should have asked the third-party ranking entities.  But it did not, and thereby it knowingly concealed and omitted these material facts from the ranking entities, such as U.S. News and World Report, among others.

129.  Rutgers intended that the third-party ranking organizations would rely on its employability statistics that it deceptively reported.

130.  Rutgers misrepresented to U.S. News and World Report, and other educational ranking organizations, that its programs possessed certain characteristics, qualifications, requirements, benefits, and levels of attainment that were known not to actually exist at the time reported.

131.  At all relevant times, Rutgers knew that its Business School MBA and masters programs' rankings were based upon misreported data and deceptive reporting practices it employed.

132.  Rutgers's fraudulent misrepresentations, along with its known omissions, deceived or had the tendency to deceive a substantial segment of its student body, including Plaintiff.

133.  Plaintiff and Class members suffered an ascertainable loss in connection with the payment of tuition, fees and educational expenses to Rutgers.

134.  Rutgers knew that its rankings of the Rutgers Business School provided significant leverage to enable the school to increase enrollment in its Business School.

135.   Rutgers knew that its failure to achieve high rankings was likely to make a difference in the purchasing decisions of prospective applicants to the Rutgers Business School.

136.   But for Rutgers' deceptive reporting of admissions data that increased its rankings, Plaintiff and Class members would not have enrolled at Rutgers and paid its premium tuition and fees.

137.   Plaintiff and Class members, despite paying a premium tuition, received an education less than and different from what they expected based on Rutgers' false statistics and rankings.

138.   Rutgers' violations of the New Jersey Consumer Fraud Act, as described herein, have directly caused Plaintiff and the Class members to have suffered ascertainable loss for damages measured by the incremental difference the tuition and fees Rutgers actually charged to Plaintiff and the amount of tuition and fees they would have paid had they enrolled in other unranked or lower ranked programs.

139.   Rutgers' violations of the New Jersey Consumer Fraud Act, as described herein, have directly caused Plaintiff and the Class members to have suffered ascertainable loss for damages in the nature of costs for books and other fees and educational expenses.

140.   As a proximate result of Rutgers' New Jersey Consumer Fraud Act violations, Defendants are liable to Plaintiff and Class members for compensatory, consequential, punitive, and treble damages.

141.   As a proximate result of Rutgers' New Jersey Consumer Fraud Act violations, Defendants are liable to Plaintiff and Class members for reasonable attorneys' fees and costs of this litigation.

## COUNT II

### Breach of Contract

### (On Behalf of Plaintiff and the Class Against All Defendants)

142.   Plaintiff re-alleges and incorporates by reference all previous allegations as though set forth in full herein.

143.   By the act of matriculation, together with payment of required fees, a contract between Plaintiff and Class members, on the one hand, and Defendants, on the other hand, was created, in addition to any enrollment contract that may have existed between Defendants and the Plaintiff.

144.   The law recognizes that there is an educational contractual relationship between student and college/university.

145.   Plaintiff accepted Rutgers' offer to education leading to a degree and entered into an agreement to attend Rutgers Business School in exchange for payment of agreed upon tuition and fees.

146.   Rutgers agreed to provide Plaintiff with the necessary course work, instruction and training, in a specified time frame, whereby Plaintiff would be eligible to earn certification for a degree upon successful completion of the required courses.

147.   Plaintiff and Class members performed their obligations under the contract.

148.   Rutgers breached the educational agreement with Plaintiff and each Class member by misreporting data to educational ranking organizations.

149.   Rutgers breached its educational agreement with each Plaintiff and members of the Class by representing to U.S. News and World Report and the Financial Times, among others, that its programs possessed certain characteristics, qualifications, requirements, benefits and levels of attainment that were known not to actually existed at the time of reporting.

-38-

150.   Plaintiff and the Class members reasonably relied upon the fact that Rutgers would truthfully and accurately submit information and critical data to U.S. News and World Report and other organizations that ranked U.S. programs.

151.   Plaintiff and the Class members had no means of knowing or learning that Rutgers was engaged in misreporting of data to educational ranking organizations.

152.   If Plaintiff and/or Class members had knowledge of Rutgers' misreporting of data and deceptive practices described herein, they would not have applied for admission or agreed to pay Rutgers' premiums for tuition, fees, and costs.

153.   By reason of Rutgers' above-described breaches of the educational agreement, Plaintiff and Class members have been damaged and sustained pecuniary injury.

154.   By reason of Rutgers' above-described breaches of the educational agreement, Plaintiff and Class members have sustained damages for the loss of the benefit of the bargain, equal to what Plaintiff and the Class members would have received, if the representations to the educational ranking organizations had been true.

155.   By reason of Rutgers' above-described breaches of the educational agreement, Plaintiff and Class members have suffered out-of-pocket damages for the incremental difference between the tuition and fees Rutgers actually charged to Plaintiff and Class members, and the amount of tuition and fees they would have paid had they enrolled in other unranked programs.

156.   By reason of Rutgers' above-described breaches of the educational agreement, Plaintiff and Class members have suffered consequential damages in the nature of books, educational expenses, application fees, transaction fees, and interest charged in connection with student loans, including Student Fees, Technology Fees, PIRG Fees, School Fees. *See, e.g.*, https://www.business.rutgers.edu/part-time-mba/tuition (last visited April 12,

2022).

157.   As a proximate result of Rutgers' breaches of the education agreement, Defendants are liable to Plaintiff and Class members for reasonable attorneys' fees and costs of this litigation.

## COUNT III

### Unjust Enrichment

### (On Behalf of Plaintiff and the Class Against All Defendants)

158.   Plaintiff re-alleges and incorporates by reference all previous allegations as though set forth in full herein.

159.   At all relevant times, Rutgers knew that the misreporting of critical data to educational ranking organizations was necessary for it to improve and maintain its rankings of Rutgers Business School.

160.   Rutgers knew that its rankings provided significant leverage to enable the school to increase tuition rates and fees for its program offerings.

161.   Rutgers knew that its failure to achieve high rankings, as described above, was likely to make a difference in the purchasing decisions of prospective applicants to Rutgers' MBA and masters programs at Rutgers Business School.

162.   Plaintiff and the Class members paid a premium for tuition and other fees to attend Rutgers Business School and did not receive what they bargained for.

163.   Rutgers' actions, conduct and omissions, as described herein, were immoral, unethical, unjust, and unscrupulous.

164.   As a result of the foregoing, Defendants were enriched at Plaintiff and the Class members' expense, by Rutgers' wrongful conduct and actions, and accordingly, it would be inequitable to permit Defendants to retain all of the benefits Plaintiff and Class members conferred on Defendants the form of tuition and fees paid.

165.   Plaintiff and Class members are entitled to and hereby pray for an order of

restitution as redress for Defendants' unjust enrichment.  Plaintiff prays for the establishment of a Court-ordered and supervised common fund from which the claims of affected Class members may be paid and the attorneys' fees and costs of suit expended by class counsel, as approved by the Court, may be awarded and reimbursed.

166.  Defendants continues to falsely represent on its web site that it offers campus facilities with significant benefit and value to students and continue to falsely represent the value of their in-person on-campus classroom instruction.  See https://www.business.rutgers.edu/news/university-responds-lawsuit-against-rutgers-business-school; https://www.business.rutgers.edu/sites/default/files/documents/factsheet-mba-full-time.pdf (last visited April 12, 2022).  Unless restrained by way of injunctive relief, Defendants' conduct is reasonably likely to lead to irreparable harm.  Plaintiff and Class members are entitled to and hereby pray for injunctive relief to enjoin Defendants' continued conduct.

167.  By reason of the foregoing, Plaintiff and Class members have sustained damages in an amount to be determined at trial.

## VI.       PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, respectfully requests that the Court finds against Defendant as follows:

1.  An order certifying the action as a class action as defined herein, appointing Plaintiff as Class representative, his counsel as Class counsel, and directing that notice be disseminated to the absent Class members;

2.  For judgment in favor of Plaintiff and Class members and against Defendants on all counts and claims for relief;

3.  For compensatory, consequential, general, and special damages and/or restitution in an amount to be determined at trial;

4.   For statutory damages, punitive damages, treble damages, and special or exemplary damages to the extent permitted by law;

5.   Pre-judgment and post-judgment interest at the maximum legal rates; and

6.   For the establishment of a Court-ordered and -supervised common fund to be funded by Defendants and from which claims of all eligible class members will be paid, attorneys' fees awarded to class counsel will be paid, costs of suit approved by the Court and incurred by Class counsel will be reimbursed, and any award of interest will be disbursed;

7.   For interest as permitted by law;

8.   For an award of attorneys' fees;

9.   For costs of suit;

10.   For declaratory relief, to have the Court declare the obligations of the parties;

11.   For injunctive and declaratory relief to enjoin Defendants' ongoing conduct; and

12.   For all such other relief as the Court deems just and proper.

## VII.       DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff LORENZO BUDET, on behalf of himself and all others similarly situated, hereby demands a jury trial with respect to all issues triable of right by jury.

## VIII.       CERTIFICATION

It is hereby certified pursuant to 28 U.S.C. § 1746 and pursuant to L.Civ.R. 11.2 that the matter in controversy is not presently the subject of any other action pending in any court or of an arbitration proceeding to date.

Dated:  April 12, 2022

By:

**McOMBER McOMBER & LUBER, P.C.**

*/s/ Charles J. Kocher, Esquire*
Matthew A. Luber, Esq. (NJID 017302010)
Charles J. Kocher, Esq. (NJ ID 016952004)
Tyler J. Burrell, Esq. (NJ ID 377942021)
McOmber McOmber & Luber, P.C.
39 E. Main Street
Marlton, NJ 08053
(856) 985-9800 Phone
(856) 263-2450 Fax

Attorneys for Class
Representative Plaintiff
LORENZO BUDET, on
behalf of himself and all
others similarly situated